IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY EASTERDAY, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| vs. | : | NO.  14-1415 |
| | : | |
| **THE FEDERATED MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                            February 8, 2016

      This action involves an insurance coverage dispute arising from the defendant's denial of Plaintiff Terry Easterday's claim to recover underinsured motorist benefits under the defendant's business auto insurance policy.  The plaintiffs have moved to remand this action to the Court of Common Pleas of Philadelphia County.  For the following reasons, I will decline to exercise jurisdiction over this matter, and will grant the motion in its entirety.

## I.  BACKGROUND

      Plaintiffs Terry and Linda Easterday are a married couple living in Denver, Pennsylvania.  Defendant Federated Mutual Insurance Company is a Minnesota corporation conducting business in the Commonwealth of Pennsylvania, including Philadelphia.  Mr. Easterday was an employee of the defendant and drove a company vehicle during all relevant periods in this action.

      On May 3, 2010, Jason Brubaker, an underinsured motorist, failed to stop his car and drove it into the rear of the company vehicle Mr. Easterday was driving.  The

defendant owned the car and insured it under a business auto policy. On August 18, 2011, Mr. Easterday was involved in a second rear-end collision with Maria Lopez, another underinsured driver, in Bristol Township, Pennsylvania. Mr. Easterday was again driving a company-owned vehicle insured under the business auto policy.

Both accidents allegedly resulted in "serious and permanent injuries" to Mr. Easterday. The coverage provided by the defendant was issued in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701, *et seq*. The policy contained at least $1,000,000.00 in liability coverage. Following the accidents, the plaintiffs made claims upon Jason Brubaker's automobile liability insurance carrier, Progressive Insurance Company, and upon Maria Lopez's insurance carrier, USAA Insurance, seeking recovery of damages in tort. Progressive tendered its policy limits of $15,000.00 in liability coverage and USAA tendered its policy limits of $20,000.00 in liability coverage under the policies of insurance issued to the tortfeasors.

Following the resolution of the underlying tort action, the Easterdays made a claim upon the defendant seeking recovery of underinsured motorist benefits under the business auto policy in question. The defendant denied the claim on the basis that the policy did not provide coverage for underinsured motorist benefits. The defendant contends that the named insured, Federated Mutual Insurance Company, had waived underinsured motorist coverage under the policy of insurance in question in accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701, *et seq*.

On July 20, 2012, a claims supervisor for the defendant forwarded a copy of the rejection of underinsured motorist coverage to the plaintiffs' attorney. The attorney responded that the rejection of that coverage did not comply with the requirements of Pennsylvania's Motor Vehicle Financial Responsibility Law. The claims supervisor then responded that the "legal issues raised in your recent correspondence" were being reviewed. Having heard nothing for several months, the attorney wrote the claims supervisor again, asking for a response to his letter challenging the rejection of underinsured motorist coverage. The attorney received a response from the claims supervisor dated January 30, 2013, which denied the claim again contending that the waiver of coverage complied with the law's requirements. The plaintiffs insist that the rejection does not specifically comply with the requirements of the law, and it is therefore void. Specifically, the plaintiffs allege that the form used by the defendant to waive the underinsured coverage does not comply with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, which provides that the "named insured shall be informed that he may reject underinsured motorist coverage by signing the follow written rejection form:

> **REJECTION OF UNDERINSURED**
> **MOTORIST PROTECTION**
>
> **By signing this waiver, I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage."**

3

The plaintiffs argue that because the defendant's form does not specifically comply with the law's requirements, the defendant must make available to them underinsured motorist coverage in an amount equal to the liability limits of coverage under the policy of insurance in question. The defendant, the plaintiffs contend, is aware that its form does not comply with the law, but has nonetheless refused to provide coverage, and has done so wrongfully and in bad faith.

On February 11, 2014, the Easterdays filed this Class Action Complaint in the Court of Common Pleas of Philadelphia County, and within thirty days, the defendant removed it here. In Count I, the Easterdays seek declaratory relief requesting that the court enter an Order declaring, among other things, that the Policy "is required to provide underinsured motorist coverage to the plaintiffs, Terry and Linda Easterday, in connection with injuries sustained in the motor vehicle accident." See Compl. ¶ 81. In Count II, the plaintiffs bring a breach of contract claim, alleging that the defendant breached the insurance policy in failing to make payment of underinsured motorist benefits to the plaintiffs in connection with the injuries sustained in the May 30, 2010 and the August 18, 2011 motor vehicle accidents. Id. at ¶ 109. In Count III, the plaintiffs allege that the defendant acted in bad faith in denying coverage, and seek compensatory and punitive damages. Id. at ¶¶ 112-118.

## II. STANDARD

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, textually confers discretionary jurisdiction upon federal courts in adjudicating claims for declaratory relief. See 28 U.S.C. § 2201(a) (a court "'may' declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought"); see also Reifer v. Westport Insurance Corp., 751 F.3d 129 (3d Cir. 2014) (district courts are to consider factors beyond the existence of parallel state proceedings, including the nature of any state law claims, in determining whether to exercise Declaratory Judgment Act jurisdiction). The court in Reifer held that this provision "place[s] a remedial arrow in the district court's quiver" and confers a "unique and substantial discretion" on federal courts to determine whether to declare litigants' rights. Reifer, 751 F.3d at 139 (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286, 288 (1995)). Under the circumstances in Reifer, the court concluded that the district court's decision to decline to exercise its Declaratory Judgment Act jurisdiction "was proper because the lack of pending parallel state proceedings was outweighed by another relevant consideration, namely, the nature of the state law issue raised by [the plaintiff]." Reifer, 751 F.3d at 148. "Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction." Id. (quoting State Auto Ins. v. Summy, 234 F.3d 131, 135-36 (3d Cir. 2000) ("the state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum"). The fact that district courts are limited to predicting— rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" Id.

The Court of Appeals for the Third Circuit set forth a two-part analysis for consideration when faced with a declaratory judgment request. Reifer, 751 F. 3d at 143.

First, a determination must be made about whether there are pending state court proceedings.  Id. at 144 (stating "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider").  The absence of pending parallel state proceedings creates a rebuttable presumption in favor of jurisdiction unless good reasons exist for overriding the presumption.  State Nat'l Ins. Co. v. Landis, 14-cv-607, 2015 U.S. Dist. LEXIS 5113, *14 (E.D. Pa. January 15, 2015).  To the contrary, the presence of a parallel state action triggers a rebuttable presumption against jurisdiction, unless again good reasons exist for overriding the presumption.  Id.

The second part of the Reifer analysis, however, takes the form of a multi-factor balance test, the application of which "should be articulated in a record sufficient to enable" effective appellate review.  Id. at 147.  This part guides the district court in determining whether to override the applicable presumption.  State Nat'l Ins. Co., 2015 U.S. Dist. LEXIS 5113 at *14 (citing Reifer, 751 F. 3d at 145-47).  To that end, the court should guide its exercise of sound and reasoned discretion by giving meaningful consideration to the following factors to the extent they are relevant:

    1.  The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

    2.  The convenience of the parties;

    3.  The public interest in settlement of the uncertainty of obligation;

    4.  The availability and relative convenience of other remedies;

    5.  A general policy of restraint when the same issues are pending in a state court;

    6.  Avoidance of duplicative litigation;

7. Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

8. (In the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. Reifer, 751 F. 3d at 146. These factors are non-exhaustive, and there will be situations in which district courts must consult and address other relevant case law or considerations. Id.

## III. DISCUSSION

Initially, I note that the case before the court in Reifer involved only declaratory claims and not, as here, a mix of declaratory and coercive[1] claims. The court noted that it has "never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed." Id. at 136 n.5. Courts in our circuit have addressed requests for declaratory judgment in an insurance coverage case where legal relief was additionally requested and no federal issue was implicated by adopting the "heart of the matter approach."[2] See Hartford Ins.

---

[1] Coercive claims refer to those "seeking compensatory damages or injunctive relief." Perelman v. Perelman, 688 F.Supp.2d 367, 372 (E.D. Pa. 2010).

[2] Other courts have employed an alternative approach referred to as the "independent claim" test. Those courts have found that the "heart of the matter" test fails to give adequate consideration to the Supreme Court's statement in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), that where a federal action involves so-called "coercive" claims seeking compensatory damages or injunctive relief, a federal court has "a virtually unflagging obligation" to exercise its jurisdiction. See Perelman v. Perelman, 688 F. Supp. 2d 367, 377 (E.D. Pa. 2010) (quoting Colorado River, 424 U.S. at 817). In Perelman, the district court rejected the "heart of the matter" test in favor of the "independent claim" test, according to which "a court must first determine if the coercive claims are non-frivolous and could have been brought 'independently' in federal court, without the accompanying declaratory action." Id. If

Co. Of the Southeast v. John J., 848 F. Supp. 2d 506 (M.D. Pa 2012); see also Rarick v. Federated Service Insurance Company, 2015 U.S. Dist. LEXIS 129860 (E.D. Pa. September 28, 2015) (applying the "heart of the matter" approach when both declaratory and coercive claims were involved).  Under that approach, a court examines the relationship between the claims, and determines what the essence of the dispute concerns. ITT Indus., Inc. v. Pac. Emp'rs. Ins., 427 F. Supp. 2d 552, 566–67 (E.D. Pa. 2006) (applying the "heart of the matter" test after determining that the essence of the dispute concerns the scope of the insurance coverage, and the court must rule on this question before addressing the breach of contract and bad faith claims).  It looks to whether the nucleus of an action is declaratory or coercive, and will exercise jurisdiction over the whole if the core is coercive, and will exercise discretion as to both claims if it is declaratory.  Hartford, 848 F.Supp.2d at 511.  To determine such "heart of the matter," these courts will consider whether the injunctive claim hinges on the declaratory ones. Id.  Courts following this approach have been persuaded that "an approach that examines the crux of the litigation, and carefully considers the law surrounding a court's discretionary exercise of jurisdiction, best accommodates a balance between the various interests at stake." Columbia Gas of Pa. v. Am. Int'l Grp., No. 10-1131, 2011 U.S. Dist. LEXIS 7919, *8 (W.D. Pa. January 27, 2011).  Those courts have concluded that "[g]iven the administrative, jurisprudential, and other concerns" at stake in a determination of

---

so, the court has no discretion to dismiss the coercive claims.  Id.  Because I find that the outcome of the plaintiffs' claims for breach of contract and bad faith are dependent on how the insurance policies are interpreted for the declaratory judgment claim, I apply the "heart of the matter" test.

whether to exercise jurisdiction, "it is fundamentally reasonable to pull a dependent coercive claim within the ambit of the discretion afforded its declaratory counterpart." Columbia Gas, 2011 U.S. Dist. LEXIS at *9. "It would be the tail wagging the dog if the presence of a subordinate claim were sufficient to require a federal court to hear primary claims that it has determined are better resolved elsewhere." Id.

Here, the Easterdays have brought both declaratory and coercive claims. In Count I, they request relief in the form of a declaration that the business auto policy issued by the defendant is required to provide them with underinsured motorist coverage; that the other policies issued by the defendant under which each member of the class is eligible to recover uninsured motorist and/or underinsured motorist benefits are required to provide them with such benefits; and that each member of the class is entitled to counsel fees and costs from the defendants. In Count II, they seek judgment in their favor for underinsured motorist benefits in the full amount of damages sustained; judgment in the favor of each class member; and attorney's fees and costs. Finally, in Count III, the plaintiffs seek judgment in their favor for interest, fees, costs, and punitive damages; and judgment on behalf of each member of the class for interest, fees, costs, and punitive damages. To reach a disposition in Counts II and III, it is necessary to first reach a disposition in Count I. The legal claims hinge on the declaratory claim. The crux of this litigation is whether the insurance policy in question provides coverage to the plaintiffs. The legal claims for damages are secondary. Accordingly, I am convinced that employing the heart of the matter test would be most advantageous in this action.

At the first part of the Reifer analysis, I find that there are no pending parallel state court proceedings in this case. This result "militates significantly in favor of exercising jurisdiction." Reifer, 751 F. 3d at 144. Nevertheless, this presumption is rebutted in the second part of the analysis.

Most of the factors enumerated in Reifer are either neutral or non-applicable to my quest to determine whether to retain jurisdiction here. The convenience of the parties is not affected by having their case remain here. Likewise, the avoidance of duplicative litigation or a general policy of restraint is not triggered because there are no parallel proceedings in state court. The first listed factor, however, strongly weighs against retaining jurisdiction. A federal court declaration will resolve nothing here. The state law issues in this case outweigh the presumption in favor of retaining jurisdiction. In my Memorandum denying a motion to consolidate this case, I found that several issues of first impression were present which had not yet been addressed by the courts in Pennsylvania. See Easterday v. Federated Mutual Insurance, No. 14-cv-1415, 2015 U.S. Dist. LEXIS 36563, *14 (E.D. Pa. March 24, 2015). For example, a question exists as to whether the defendant complied with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law in creating its own waiver of underinsured motorist coverage rather than using the form required by the statute. The issue of the validity of the defendant's form is an issue of first impression in Pennsylvania, and would be more appropriately decided by the state courts. I further noted:

> there is a question as to whether an insurer may create two tiers of eligible claimants for recovery of uninsured and underinsured motorist benefits under the Pennsylvania

> MVFR Law allowing benefits to the first tier while denying benefits to the second tier. Also, there is the question as to whether an insurer may utilize a rejection mandated by the Pennsylvania MVFR Law but contend that it only applies to the second tier of claimants, allowing the first tier to recover.

See Easterday, 2015 U.S. Dist. LEXIS 36563 at *9-10.  Under these circumstances, it is proper to "step back" in order to allow state courts the opportunity to resolve unsettled state law matters.  See Summy, 234 F.3d at 136.  Accordingly, I find that declining jurisdiction is also proper in this case.

In conclusion, the Easterdays are, in essence, seeking a declaration that they are entitled to underinsured motorist benefits under the defendant's business policy.  The outcome of the bad faith and breach of contract claims depends on the resolution of the declaratory judgment claims.  This action neither presents a federal question nor does it promote a federal interest.  The dispute over the scope of coverage of the insurance contract is purely a matter of state law and there are no federal interests at stake.  In fact, this action involves novel issues involving purely state law.  As this action is inherently one for declaratory judgment, coupled with claims for breach of contract and bad faith, I will exercise my discretion to decline jurisdiction and grant the motion to remand this matter to state court.

An appropriate Order follows.